IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO.: 05-0224 (RMC) |
| v. | : |
| DENIS ROBERT FOUGERES, | : |
| Defendant. | : |

FILED

AUG - 8 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## FACTUAL PROFFER
## IN SUPPORT OF GUILTY PLEA

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this statement of facts which the United States would have presented if this matter had gone to trial.

On May 5, 2005, at approximately 9:00 a.m., Denis Robert Fougeres (hereinafter "defendant"), a citizen of France, arrived at a building occupied by the Board of Governors of the Federal Reserve System and located at 20th St. and Constitution Ave., N.W., Washington, D.C. Defendant approached a Federal Reserve Police officer who was posted at the entrance and stated in English that he was looking for the federal bank and that he wanted to deposit money and open an account. When the officer told defendant that the location does not accept money, defendant said that he had special bills and produced a 1934 $100,000 Federal Reserve Gold Certificate. Defendant added that he had $10,000,000 worth of the bills and then pulled out a stack of bills bound together with a paper wrapper. Defendant again told the officer that he wanted

to deposit the money into an account and transfer it to his Swiss bank account, and then asked to talk to someone in the building. The officer contacted an employee within the building by telephone and permitted defendant to speak to that employee. Defendant told the employee that he had certificates in denominations as large as $100,000, and wanted to exchange them for cash or deposit them in some way. The employee told defendant that the Federal Reserve does not handle individual accounts and that he should go instead to a commercial bank.

U.S. Secret Service officers arrived on the scene shortly thereafter and quickly determined that the certificates defendant was seeking to exchange or deposit were counterfeit. At least two words on the certificates are printed in a crooked fashion. There are also fluorescent pink and yellow markings on the certificates, which appear to be an effort to emulate the fibers that appear in genuine currency. The certificates appear to have been produced by an inkjet printer from a scanned image of a specimen bill, and the ink on the certificates is two dimensional, rather than three dimensional, as is the case with genuine currency.

Defendant provided contradictory accounts of how he had obtained the certificates and whether he thought they were genuine in response to questioning by Secret Service agents. Defendant initially claimed that he was building a home in the Phillippines and had unearthed a box containing the certificate during excavation. When asked to provide further details about this discovery, defendant then changed his story and stated that he

had received the certificates in the Phillippines from a man whom he had met in 2001 and befriended thereafter, but knew only as "Junior." Defendant stated that in September 2004, "Junior" asked him to change $100,000 for him and showed him a certificate. Defendant took a picture of the bill and agreed to ask a friend who used to work in a bank about the bill. When defendant returned to France, he gave the photograph to his friend and asked him to get in touch with his bank contacts to find out if the money was real and if the contacts could change the bill. After his friend reported back to him that the money "looked good," defendant returned to the Phillippines in December 2004 and told Junior what he had learned. Junior then gave defendant a bundle containing 100 of the certificates. Defendant again returned to France, and in February 2004, he and his friend took the actual certificates to a UBS Bank representative in Switzerland who would not take the risk of accepting the certificates and informed them that he did not think the certificates were "good." Defendant's friend nonetheless made yet another inquiry about the money and reported to defendant that an American lawyer said that the money "looked good," that it probably only could be changed from government to government, and that he would have to take it to an American federal bank. Defendant traveled to the United States on May 4, 2005, to ask the Federal Reserve Bank "how we can change the money." Defendant admitted that he did not declare the money to U.S. Customs upon entry into the country. When asked why he did not do so, defendant initially stated that he did not think about doing so

"because I didn't know if the money was real." Defendant then corrected himself and said that he knew the money was real, but did not think about declaring it, adding, "I wanted to ask the Federal Reserve Bank about the money." Defendant also stated that he intended to open an account in Switzerland with the money and that he and Junior were planning to use the money to open an "Organization of No Government" [an "NGO" or non-governmental organization] and build hospitals and schools in the Phillippines.

Based on the circumstances under which defendant claimed to have acquired the certificates, his unsuccessful efforts to confirm their authenticity, and the obvious indications of their counterfeit nature, the defendant knew, or had reason to believe, that the certificates were, in fact, worthless or significantly devalued at the time he presented them for exchange or deposit. In doing so, defendant thus attempted to wrongfully obtain and use $10,000,000 belonging to the Board of Governors of the Federal Reserve System, with the intent to appropriate that money for his own use and to deprive the Board of Governors of the Federal Reserve System of a right to and benefit of the money.

*Angela Schmidt*
ANGELA G. SCHMIDT
Assistant United States Attorney
Texas Bar No. 17764980
Transnational/Major Crimes Section
555 4th Street, N.W., 11th Floor
Washington, D.C. 20530
(202) 514-7273
Angela.Schmidt@usdoj.gov

4

## Defendant's Acceptance

I have read this Factual Proffer in Support of Guilty Plea and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Factual Proffer and all matters relating to it. I fully understand this Factual Proffer and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Factual Proffer fully. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

8/8/2005
Date

Denis Robert Fougeres

## Defense Counsel's Acknowledgment

I am Denis Robert Fougeres' attorney. I have reviewed every part of this Factual Proffer in Support of Guilty Plea with her. It accurately and completely sets forth the Factual Proffer agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

8/8/05
Date

Lara Quint, Esq.

5